Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5948 | **DATE** | 4/10/2001 |
| **CASE TITLE** | JACQUELINE WILSON vs. CLEMENTINA SOUCHET | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   **Motions (10-1 and 18-1) for summary judgment are denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | APR 1 2 2001 date docketed | 24 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 01 APR 11 PM 5:46 | date mailed notice | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE WILSON,

    Plaintiff,

v.

CLEMENTINA SOUCHET,

    Defendant.

No. 98 C 5948
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Clementina Souchet owns an apartment building on Chicago's Northwest side. In the Winter of 1997-1998, Souchet placed an ad in the *Chicago Sun-Times* seeking new tenants for a three-bedroom apartment in the building. Jacqueline Wilson expressed some interest in the apartment, but believes Souchet prevented her from renting it because Wilson is African-American. This 42 U.S.C. §§ 1981, 1982 suit followed.

Wilson saw the ad and her fiancé, James Hension, called the listed number. He left a message and left his name and number. An hour later, a woman called back. Wilson answered the phone, and the caller asked, "Can I speak to Carmen?" Wilson told the caller, "You have the wrong number," and hung up. Wilson then checked her caller ID. The display identified the caller as "Sandra Souchet" and the number as the same number listed in the *Sun-Times* ad.[1] At that moment, Wilson became suspicious of discrimination.

---

[1] Souchet lives by herself in a unit in the building and rents out the other apartments; she handles the rental applications herself. There is no dispute that Sandra or Sandro Souchet refers to defendant.

24

The next day, Wilson asked Luz Vaga, her supervisor at work, to call about the apartment. Vaga spoke with a woman who said Vaga could look at the apartment the next day. Wilson then called the same number, and a woman told her that someone had put a deposit on the apartment. Now more suspicious, because of the different information concerning the apartment, Wilson called the Leadership Council for Open Metropolitan Communities to complain about discrimination. The Leadership Council is a fair housing organization and, after receiving Wilson's complaint, conducted an investigation.

Ellyn Cronin is a senior investigator for the Leadership Council, and she is white. Cronin called the advertised number and received an appointment to see the apartment. She went to the building, viewed the apartment and received a rental application. Cronin returned to the Leadership Council and asked David Schucker, a white male, Queen Frazier-Blackmon, an African-American female, and Annie Lewis, an African-American female, to place phone calls to ask about the apartment.[2] Schucker (who received Wilson's initial complaint) called Souchet and got an appointment to see the apartment. Both Frazier-Blackmon and Lewis, like Wilson before them, were told a deposit had been placed on the apartment. There is no evidence that anyone placed a deposit on the apartment at any time.

Schucker took Wilson with him when he went to see the apartment. Wilson stayed in the car and Schucker went inside, posing as a university professor. Souchet showed him the

---

[2] Souchet says all phone tests occurred after Cronin returned from the apartment and Wilson admitted that fact in her Local Rule 56.1 statement. See Plaintiff's Response to Def's Statement of Fact ¶ 176. However, Wilson also says that Cronin asked Annie Lewis to make the call before Cronin saw the apartment. Plaintiff's Mem. at 5. I am inclined to hold Wilson to her admission in her Local Rule statement; however, the sequence of events is not material.

2

apartment, and Schucker then asked if he could bring a friend to look at it. Souchet said, "certainly," and Schucker signaled to Wilson to come out of the car. This was the first time Souchet saw Wilson. Schucker does not recall any impolite behavior on Souchet's part. Wilson testified that Souchet looked "stunned" when she saw Wilson. The three of them walked back up to the apartment and Schucker showed Wilson the features of the apartment; Souchet did not give Wilson a tour. At some point when they were walking through the apartment, Souchet told Schucker that a doctor and someone else were interested in the apartment. Either Schucker or Wilson asked for an application and both of them accompanied Souchet into her apartment on the first floor. Souchet retrieved an application form and Schucker recalls that he gave the form to Wilson. Wilson did not apply for the apartment.

Cronin called Souchet and asked to see the apartment again so that her son could see it. Cronin says that Souchet said to her:

> No one else is interested right now, but you wouldn't believe what happened here yesterday after you saw it. A man came yesterday, he liked the apartment a lot. But I don't like what he did.... He said he has someone else to see the apartment. Why didn't he bring her in the first time so I didn't have to go up and down the stairs twice? A black woman comes to the door. Can you believe it? I behaved myself. I was respectful. She was crazy about the apartment. I figured they are lovers they want a place to rendezvous. They called me back today but I said I don't want them. I'm not going to rent to them.[3]

Souchet denies that she used this language. Cronin made an appointment to see the apartment again, but did not keep it.

---

[3] The quotation is taken from Cronin's written report memorializing her purported conversation with Souchet. Plaintiff's Exh. D. Souchet makes no evidentiary objection to this report, other than to deny the truth of the matter asserted.

3

I.      42 U.S.C. §§ 1981, 1982

To establish a claim under §§ 1981 and 1982, Wilson must show that (1) she is a member of a racial minority; (2) Souchet had an intent to discriminate on the basis of race; and (3) the discrimination concerned the making and enforcing of a contract (§1981), or the sale or lease of real property (§ 1982). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Shaikh v. City of Chicago*, 2001 WL 123784 *4 (N.D. Ill. 2001).[4]

Defendant moves for summary judgment based on the second and third elements of Wilson's case. Summary judgment is appropriate if, evaluating the admissible evidence in the light most favorable to Wilson, there is no genuine issue of material fact and Souchet is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

Intent to discriminate may be shown by the *McDonell Douglas* burden-shifting approach, although mere disparate impact is not sufficient. *Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 126-127 (3rd Cir. 1990); *Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991). According to defendant, Wilson cannot prove intent to discriminate since she cannot prove Souchet knew Wilson's race at the time of the telephone call. It is undisputed that Souchet did not see Wilson until Schucker took her to view the apartment. However, I think there is a question of fact concerning Souchet's ability to discern race based on a telephone caller's voice. Wilson has evidence that three African-Americans were told someone placed a deposit on

---

[4] Courts generally analyze § 1981 and § 1982 claims in tandem. *Morris v. Office Max, Inc.*, 89 F.3d at 413.

4

the apartment, while three non-African-Americans were given appointments. Viewed in a light favorable to Wilson, this sufficiently raises an issue of disparate treatment that a trier of fact must resolve.

In a §§ 1981, 1982 case concerning leasing of property, the plaintiff's *prima facie* case requires a qualified member of a protected class to attempt to lease the space. *Chauhan*, 897 F.2d at 127. Souchet says Wilson has not shown that she was qualified or that she applied (in fact it is clear she did not fill out an application). In the context of this case, however, I think it sufficient to show that Wilson was not given the opportunity to apply because she was told a deposit had been placed on the apartment – the telephone conversation between Wilson and Souchet is the moment at issue. On the matter of qualification, the record suggests that all potential applicants, regardless of race, were similarly qualified when they called to inquire about the apartment. Souchet did not ask about qualifications before giving Schucker and Cronin appointments to see the apartment.

It is clear that Souchet did not prevent Wilson from applying for the apartment once she toured it with Schucker. Wilson did not want to apply for the apartment at that point because she felt she had been discriminated against; she also stated that she wanted something better. The evidence concerning the tour and Souchet's conversation with Cronin does not provide an independent basis for §§ 1981, 1982 liability. But, it may be relevant to discriminatory animus or intent. There is enough circumstantial evidence, based on the phone calls and the tour, to support an inference of intentional discrimination and to defeat summary judgment.

5

In addition to intent to discriminate, Wilson must show that the discrimination concerned the making and enforcing of a contract or the sale or lease of real property. As noted above, Souchet says since there was no application (and Wilson later said she wanted something better), Wilson had no desire to contract with Souchet or lease the property. During and after the tour, Souchet did not refuse admittance or service to Wilson, and Wilson did not seek to enter into a contractual relationship with Souchet. If Wilson opted not to contract with Souchet, she cannot survive summary judgment. *Office Max, Inc.*, 89 F.3d at 414-415. However, the telephone contacts are evidence of Wilson seeking the apartment, and Souchet's comment, that the apartment had a deposit on it, may be a refusal to serve. Asking a landlord about an advertisement is a necessary step in an attempt to make a contract, and a refusal to serve necessarily precludes the making of that contract. It is this attempt to contract which forms the basis for Wilson's complaint, and I think there is enough there to go to a jury.

## II. Issue Preclusion

Wilson moves for summary judgment because the issue of whether Souchet discriminated against prospective tenants has already been decided by the City of Chicago's Commission on Human Relations.[5] *Leadership Council for Metropolitan Open Communities v. Souchet*, No. 98-H-107 (C.C.H.R. January 17, 2001); Plaintiff's Exh. A. The CCHR held that Souchet discriminated

---

[5] Wilson's cross-motion for summary judgment appears also to argue that since Souchet has not articulated a legitimate reason for her treatment of Wilson, plaintiff is entitled to summary judgment. I disagree. Just because plaintiff survives defendant's summary judgment motion does not mean she is entitled to one of her own. Interpreting the facts in the light most favorable to Souchet, there are sufficient weaknesses in the *prima facie* case to preclude summary judgment in plaintiff's favor. For example, it is possible to draw an inference in Souchet's favor that she was holding the apartment for Cronin when the other African-Americans called to inquire, thereby weakening the implication of disparate treatment. It is also clear that credibility is going to determine liability, and for that reason, summary judgment is not appropriate.

on account of race when she misrepresented the apartment's availability to black phone testers. Exh. A at 31.

Wilson was not a party to that proceeding, so this is an argument for offensive nonmutual collateral estoppel. I have broad discretion to decide whether to allow this kind issue preclusion. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651 (1979).

One factor that weighs against allowing issue preclusion here is the fact that Wilson could have joined the Leadership Council's municipal suit, but didn't. See *Parklane Hosiery*, 439 U.S. at 652.[6] In addition to that consideration, however, preclusion would be inappropriate for a more fundamental reason. The CCHR did not decide the issue Wilson raises in this lawsuit. Wilson did not testify in the municipal proceeding, and the Commission made no conclusion with respect to discrimination against Wilson, only against the testers (Frazier-Blackmon and Lewis). Thus, the Leadership Council's action brought under Chicago Municipal Code 5-08-030 does not address Wilson's § 1981 action. I decline to give any preclusive effect to the conclusion of discrimination made by the Commission.

In a suit brought under the Reconstruction civil rights laws, the Commission's findings of fact (as yet unreviewed by any state court) may be entitled to conclusive weight, so-called administrative issue preclusion. See *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). The only findings of fact material to plaintiff's theory (as articulated by the summary judgment briefing) are ¶¶ 14-34 of Exhibit A. These findings relate Wilson's complaint to the Leadership

---

[6] Wilson participated in the Leadership Council's investigation and appears to have been represented for a time by the Leadership Council's attorney. She does not offer any reason why she could not have joined the Commission proceedings.

7

Council, the phone tests, Schucker and Wilson's visit to the apartment and portions of Cronin's conversation with Souchet. Many of these facts are not disputed, and, even if presumed true, are not sufficient to grant either party summary judgment. The Commission made no findings concerning Wilson's phone call to Souchet, and that is the moment of actionable discrimination in this case.

In any event, I decline to give preclusive effect to the Commission's findings of fact. Administrative findings are entitled to the same weight given by the state court. *Elliot*, 478 U.S. at 799. Illinois administrative findings are given preclusive effect when delivered in adjudicatory, judicial or quasijudicial proceedings. *Rekhi v. Wildwood Industries, Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995); *Marco v. Doherty*, 276 Ill.App.3d 121, 124-125, 657 N.E.2d 1165, 1168 (5th Dist. 1995). The CCHR certainly conducted its proceedings in an adjudicatory manner. However, Illinois courts, like federal trial courts, have broad discretion in cases of offensive nonmutual preclusion. *Herzog v. Lexington Township*, 167 Ill.2d 288, 296, 657 N.E.2d 926, 930 (1995). Thus, despite the adjudicatory nature of the Commission proceedings, I have the discretion to decline to apply nonmutual offensive administrative issue preclusion when in the interest of fairness.

Souchet tried to delay the Commission proceedings to prevent potential preclusion in this case. The Commission denied the request and told Souchet that its proceedings would probably have no effect on these federal proceedings, noting in particular the nonmutuality of the parties. *Leadership Council for Metropolitan Open Communities v. Souchet*, No. 98-H-107, 2000 WL 1005071 * 2 (C.C.H.R. June 5, 2000). Given the Commission's position, and Souchet's necessary

reliance on it, I think it unfair to allow Wilson to use the Commission's findings against Souchet now. Therefore, I will not give preclusive effect to any aspect of the Commission proceedings.

## Conclusion

The motions for summary judgment are denied [18-1] [10-1].

ENTER:

James B. Zagel
United States District Judge

DATE: APR 1 0 2001